**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| DOUGLAS CAMPBELL and DENISE CAMPBELL, on behalf of themselves and others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Docket No. 08-cv-311-P-S |
| | ) | |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR CLASS CERTIFICATION**

Plaintiffs Douglas and Denise Campbell ("the Campbells") bring this action on behalf of themselves and others in Maine who paid premiums for the purchase of title insurance from Defendant First American Title Insurance Company ("First American") in connection with refinance transactions. Plaintiffs assert that they, and others similarly situated, qualified for discounted refinance rates and did not receive those discounted rates.

Before the Court is Plaintiffs' Motion for Class Certification (Docket # 85). The Court heard oral argument on June 24, 2010. As explained herein, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion.

## I.      LEGAL STANDARD

Federal Rule of Civil Procedure 23 lays out the prerequisites for certifying any class. Generally, Rule 23(a) requires any class to have (1) numerosity, (2) commonality, (3) typicality, and (4) an adequate class representative. In addition to these four requirements, the proposed class must satisfy at least one of the subdivisions of Rule 23(b), which determines what type of class can be maintained.

It is Plaintiffs' burden to establish a basis for certification. The First Circuit requires "a rigorous analysis of the prerequisites established by Rule 23." Smilow v. Southwestern Bell Mobile Sys., 323 F.3d 32, 38 (1st Cir. 2003). Any inquiry into the merits at the class certification stage is limited "to the extent that the merits overlap the Rule 23 criteria." In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 24 (1st Cir. 2008). However, "when a Rule 23 requirement relies on a novel or complex theory as to injury, . . . the district court must engage in a searching inquiry into the viability of that theory and the existence of the facts necessary for that theory to succeed." Id. at 26.

Although the rule contemplates that the district court must decide whether to certify any case as a class action "[a]t an early practicable time," Fed. R. Civ. P 23(c)(1)(A), "[c]ourts may alter certification orders prior to final judgment." See Brown v. Colegio de Abogados, -- F.3d --, 2010 WL 2870694 at *4 (1st Cir. July 23, 2010) (citing Fed. R. Civ. P. 23(c)(1)(C)).

## II.    CURRENT FACTUAL RECORD[1]

Under Maine law, title insurance rates must be filed with and approved by the Superintendent of Insurance. See 24-A M.R.S.A. §§ 2302(1)(D), 2304-A. Moreover, a title insurer may not "make or issue a contract or policy, except in accordance with" those approved filed rates. Id. § 2316. Like many title insurers, First American offers several rates for lender's title insurance. As of November 1996, the following First American rates were approved: (1) a standard rate of $1.75 per $1,000 mortgage principal (up to $1,000,000), and (2) a refinance rate

---

[1] In the section that follows, the Court attempts to summarize the relevant facts provided by the parties via the voluminous record that accompanies the pending motion. The Court has reviewed this record in its entirety but limits its discussion to those portions of the record relevant to the pending certification request. The Court is not required to make "findings" in connection with class certification and, in light of the limited class discovery, any facts laid out in this order are necessarily preliminary and subject to "revisiting." In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d at 26-27. Thus, nothing in this section is intended to bind the parties or the Court with respect to the merits or later motions that reflect further factual development.

of $1.00 per $1,000 mortgage principal up to the amount of the previous mortgage, with any excess calculated at the standard rate. First American's Maine Rate Schedule provides that the refinance rate is available to any "borrower who refinances an existing mortgage with any lender, within two years, which mortgage was insured by any title insurance policy issued by a title insurance company licensed to do business in the state of Maine at the date of issuance." (1993 First American Refinance Rate Definition Amendment (Ryan Decl. Ex. C (Docket # 86-6)) at 2.)

On or about October 1, 2004, the Campbells entered into a $150,000 mortgage with the John E. Streeter Revocable Trust, a private lender. The settlement agent was Warranty Title Company, which at the time was an independent title agent for Chicago Title Insurance Company. (See Cocco Decl. (Docket # 87-7) ¶4.) The HUD-1 Statement for the Campbells' October 1, 2004 closing shows a title search fee of $637.50 to First Title of Maine (at line 1102). (See Pls. Ex. C (Docket # 55-3) at 3.) At that time, First Title of Maine was an independent agent for Commonwealth Title. (See Cocco Decl. ¶5.) The Campbells also have a bill from First Title of Maine, dated September 29, 2004, stating that the $637.50 charge included a $275.00 charge for title examination and a $362.50 fee for title insurance premium. (See Pls. Ex. D (Docket # 55-4).) On the 2004 HUD-1 Statement, the lines for Title Insurance (1108-1110) indicate the name "Chicago Title Insurance Company" but no amount is filled in. (See Pls. Ex. C (Docket # 55-3) at 3.) Notably, searches of currently available records for Chicago Title and Commonwealth Title (conducted in connection with class discovery) have turned up no evidence that a lender's title policy was issued by either insurer in connection with Campbells' 2004 closing. (See Cocco Decl. & Parys Decl. (Docket # 97).)

On July 14, 2005, the Campbells refinanced the same property obtaining a loan for $277,100 from Ameriquest Mortgage Company. The settlement agent was Geoffrey B. Ginn & Associates ("Ginn"). The HUD-1 Statement for the July 14, 2005 closing shows a title insurance charge of $611.50 with title insurance to be provided by First American (at line 1108). (See Pls. Ex. 3. (Docket # 55-5) at 3.) The HUD-1 Statement also reflects a $275.00 fee for title examination (at line 1103) and a $320.00 document preparation fee (at line 1105); both to be paid to Geoffrey B. Ginn & Associates. The Campbell's lender title insurance premium of $611.05 reflects First American's standard rate of $1.75 per $1,000 plus three endorsements (totaling $75) and a survey affidavit of $50. If the Campbells had been charged First American's Filed Refinance Rate, they would have only been charged $1.00 per $1,000 on the first $150,000 (with the standard rate charged on the remaining $127,100 of their new mortgage). As a result, they would have saved a total of $114.50 on their title insurance premium at their 2005 refinancing.

There is no evidence in the record regarding any communication between the Campbells and Ginn, who acted as First American's agent in connection with the purchase of the First American lender's policy. Rather, it appears that the Campbells were not aware of the refinance rate at the time of their July 14, 2005 closing and were not asked to produce any documentation to determine if they qualified for the discounted refinance rate.

The record currently before the Court reveals only that in 2005 First American generally did not require or train its agents to disclose the existence of a lower refinance rate or otherwise investigate whether a borrower qualified for the refinance rate. As a result, the practices among First American agents in Maine varied. (See, e.g., Aiken Decl. (Docket # 87-2) ¶¶6-15 & 20; Bellefleur Decl. (Docket # 87-4) ¶¶14-17; Good Decl. (Docket # 87-16) ¶¶10-11 & 14; Ladd

Decl. (Docket # 87-23) ¶¶12-15; Reynolds Decl. (Docket # 87-27) ¶¶9-17; Smith Decl. (Docket # 88) ¶¶8-23; Stewart Decl. (Docket # 88-1) ¶12 & Ex. A.)  Nonetheless, in connection with class discovery, First American has definitively stated:  "First American has an obligation to be certain that we and our agents adhere to our filed rates and that our consumers are accurately charged for the title insurance product."  (Henckl 30(b)(6) Dep. (Docket # 85-8) at 141.)  To the extent that First American accepts that it has such an obligation, the record is devoid of evidence that anything was done to meet that obligation in connection with the Campbells' 2005 refinancing.[2]

Notably, the record does reflect that First American more recently has issued some clear directives regarding the use of its refinance rate.  On January 2, 2008, First American issued a bulletin, titled "Refinance Rate Simplification," explicitly instructing agents in Maine to charge the refinance rate if the agent had evidence that an institutional mortgage of record had been executed in the last two years. (Pls. Ex. H (Docket # 86-11).)  This change in practice reflected First American's conclusion that by 2008 most institutional lenders in Maine required title policies to insure first-lien mortgages.  However, the assumption of a prior title policy was not extended to private mortgages or home equity mortgages.

Plaintiffs assert that in accordance with applicable Maine statute and First American's Maine Rate Schedule, First American was responsible for ascertaining any borrower's eligibility for its refinance rate.  They further maintain the fact that the Campbells and other refinancers did not receive the discounted rate reflects First American's disregard for this obligation, including a

_____

[2] It is clear that in 2010 both sides have undertaken a diligent search for evidence of the Campbell's prior title policy in connection with class discovery.  (See, e.g., Cocco Decl. & Parys Decl..)  However, there is no evidence suggesting that similar searches were undertaken by Ginn in 2005.  If such searches had been undertaken at that time, First American presumably would need look no further than the file created by the title agent at the time of the Campbells' 2005 refinancing.

failure to properly train and audit its agents. Plaintiffs' Second Amended Complaint (Docket # 55) asserts the following claims: (1) Violation of Maine's Unfair Trade Practices Act, 5 M.R.S.A. § 213, (2) Breach of Contract, (3) Unjust Enrichment, and (4) Money Had and Received.[3]

## III.   DISCUSSION

This case is just one of the latest iterations of title insurance overcharge litigation. Similar claims have appeared recently as potential class actions before numerous courts. See, e.g., Mitchell-Tracey v. United General Title Ins. Co., 237 F.R.D. 551 (D. Md. 2006) (certifying class), and 2010 WL 1837723 (D. Md. May 5, 2010) (decertifying class and granting judgment on the pleadings); Alberton v. Commonwealth Land Title Ins. Co., 247 F.R.D. 469 (E.D. Pa. 2008), and 264 F.R.D. 203 (E.D. Pa. 2010) (certifying class); Mims v. Stewart Title Guaranty Co., 254 F.R.D. 482 (N.D. Tex. 2008), aff'd in part & rev'd in part, 590 F.3d 298 (5th Cir. 2009) (allowing certification of class on state law claims); Hancock v. Chicago Title Ins. Co., 263 F.R.D. 383 (N.D. Tex. 2009) (denying class certification); Macula v. Lawyers Title Ins. Corp., 264 F.R.D. 307 (N.D. Ohio 2009) (denying class certification); Chesner v. Stewart Title Guaranty Co., No. 1:06CV00476, 2008 WL 553773 (N.D. Ohio 2008) (certifying class), and 2009 WL 585823 (N.D. Ohio 2009) (decertifying class and granting partial summary judgment). On more than a couple of occasions, First American has been named as a defendant in such a class action. See, e.g., Lewis v. First Am. Title Inc. Co., 265 F.R.D. 536 (D. Idaho 2010) (certifying class); Hamilton v. First Am. Title Ins. Co., 266 F.R.D. 153 (N.D. Tex. 2010) (certifying class); Raffone v. First Am. Title Ins. Co., No. 04-78-CA (Nassau Cty Cir. Ct. March

---

[3] The Court had occasion to discuss the elements and merits of the first three of these claims in its Order on Motion to Dismiss (Docket # 39). To the extent it is relevant to the analysis of the pending motion, the Court considers the analysis contained in this earlier order to be incorporated into this decision without repeating that analysis in full.

16, 2010) (attached at Docket # 93-1) (certifying class); <u>Perez v. First Am. Title Ins. Co.</u>, No. CV-08-1184-PHX, 2009 WL 2486003 (D. Az. Aug. 12, 2009) (certifying class) and 2010 WL 1507012 (amending class certification and creating subclasses); <u>Scott v. First Am. Title Ins. Co.</u>, 2008 WL 4820498 (D.N.H. Nov. 5, 2008) (certifying class for purposes of settlement); <u>Slapikas v. First Am. Title Ins. Co.</u>, 250 F.R.D. 232 (W.D. Pa. 2008) (certifying class). The above citations, which are not exhaustive, show that the only real novel aspect of this case is the venue. However, each title insurance overcharge case is inextricably tied to state-specific title insurance regulations thereby making each venue a unique case on the merits.

In Maine, Plaintiffs seek certification of the following class:

All persons who, at any time during the six years preceding the filing of the Complaint to the present (the "Class Period"):

a. refinanced a mortgage on residential property in Maine;
b. purchased title insurance from First American in connection with the refinancing;
c. qualified for the refinance rate because they had entered into an insured mortgage within the two years prior to refinancing; and
d. paid an amount more than First American's statutorily approved refinance rate for a lender's title insurance policy.

(Pls. Motion (Docket # 85) at 4.)


### A. The Class Definition Problem

Before considering whether the proposed class meets the Rule 23 requirements for certification, the Court pauses to rectify an apparent problem with the proposed class definition. Specifically, Plaintiffs' use of the phrase "qualified for the refinance rate because they have entered into an insured mortgage." (Pls. Motion (Docket # 85) at 4.) On its face, this language is problematic because it creates a "fail-safe class," which "impermissibly determines membership based upon a determination of liability," <u>Lewis</u>, 265 F.R.D. at 551; <u>see also</u> <u>Kamar</u>

v. Radio Shack Corp., No. 09-55674, 2010 WL 1473877 at *1 (9th Cir. 2010) (unpublished) ("The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established.")

In approving a proposed class definition, the Court must ensure that "eligibility as a class member . . . is not dependent upon a legal conclusion." Alberton, 264 F.R.D. at 207. A court may, in an exercise of its discretion, revise a proposed class definition to avoid the problem of a fail-safe class. See Slapikas, 250 F.R.D. at 250-51 (amending the class definition to "replace '(b) qualified for the Reissue rate or Refinance rate discounts' with '(b) had either an unsatisfied mortgage from an institutional lender or a deed to a bona fide purchaser in the chain of title within ten years of the payment of the premium'" and thereby avoiding "the 'fail safe' issue and ensur[ing] that class members are bound by the determination of liability"); Perez, 2009 WL 2486003 at *9 (redefining the class and striking "qualified for but did not receive" language). In this case, the Court will exercise its discretion to revise the class definition to the following:

> **All persons who, at any time between September 17, 2002 and the present (the "Class Period"):**
>
> **(1)    refinanced a prior mortgage on residential property in Maine;**
> **(2)    the prior mortgage was issued within two years of the refinancing;**
> **(3)    the prior mortgage was insured by a title insurance policy issued by any title insurance company licensed to do business in the State of Maine on the date of issuance;**
> **(4)     purchased title insurance from First American in connection with the refinancing; and**
> **(5)    paid an amount more than First American's statutorily approved refinance rate for a lender's title insurance policy.**

In the Court's judgment, this revised definition avoids the problem of the fail-safe class and adds clarity by eliminating the compound requirements that Plaintiffs had included under section c of

their proposed class definition. The Court proceeds to consider whether this revised class can meet Rule 23(a)'s threshold requirements.

### B. The Rule 23(a) Requirements

#### 1. Numerosity

Plaintiffs have clearly met their burden in establishing that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P 23(a)(1). Based on limited class discovery, Plaintiffs have identified at least 167 persons who were charged the full rate for title insurance although they had a prior loan within two years thereby potentially making them eligible for the refinance rate.[4] While the overall number of class member is likely much higher than 167, identification of over 100 class member is clearly sufficient. See, e.g, Mitchell-Tracey, 237 F.R.D. at 556-57 (certifying class based on finding that there were more than 40 class members); Perez, 2009 WL 2486003 at *2 (finding numerosity satisfied based on a showing that there were more than 100 class members).

#### 2. Commonality

Rule 23(a)(2) requires the Court to find that "there are questions of law or fact common to the class." This is a "low bar" that Plaintiffs easily satisfy. In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d at 19; see also Chiang v. Veneman, 385 F.3d 256, 265 (3d Cir. 2004) (noting commonality is "not a high bar"). This case primarily requires the Court to determine under what circumstances First American was required to charge its refinance rate in light of 24-A M.R.S.A § 2316 and the First American's Maine Rate Schedule. Plaintiffs present this query in two parts: (1) What is the ascertainment obligation of First American? (2)

---

[4] Notably, First American does not contest numerosity. To the extent that First American has refused to concede numerosity via a footnote in its response, it has failed to present any arguments or objection to Plaintiffs' evidence and argument regarding numerosity or commonality. (See Def. Response (Docket # 87) at 11 n.54.)

What, if any, is the presentment obligation of a title insurance purchaser? The Court believes these common questions of law satisfy the commonality factor, and, as to be discussed later, these questions appear to predominate at this point in the case.

### 3.    Typicality

Plaintiffs also must prove that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." In re Credit Suisse-AOL Securities Litigation, 253 F.R.D. 17, 23 (D. Mass. 2008).

First American vigorously contests that the Campbells' claim is typical or that there can be any typical claim regarding a failure to charge the refinance rate on any First American title policy issued in Maine. In their papers and at oral argument, First American has repeated a simple mantra: in Maine, a prior mortgage does not equal a prior title policy. The Court has been provided ample evidence to support this conclusion; that evidence shows that historically a variety of practices have been used in Maine to insure against defects in title. The evidence further shows that only very recently have the great majority of institutional lenders in Maine routinely required title insurance (a practice that apparently has been common in other parts of the country for decades).

The impact of this evidence depends on the answers to a variety of substantive legal questions. First, what are First American's ascertainment obligations in light of Maine statute and its Maine Rate Schedule? Second, what are the presentment obligations of a refinancer in light of Maine statute and First American's Maine Rate Schedule? Third, what, if any, obligation

did First American have to disclose any presentment obligation to a refinancer?  Fourth, what were First American's obligations to train and supervise its agents to meet these various ascertainment, presentment and disclosure obligations?[5]

The Court is satisfied that the claims of the class are based on the same legal theory: namely, that they would have received the refinance rate if First American and its agents had met its ascertainment and disclosure obligations.  The Court is similarly satisfied that the answers to the questions just listed will yield a group of persons whose injuries arise from the same course of conduct by First American.  Ultimately, the answers to these questions may require the Court to reconsider the boundaries of a typical claim.  However, there is a typical claim for the class as a whole.

Given the unique facts surrounding their 2005 refinance, whether the Campbells present a typical claim is a closer call.  If it is true that the Campbells never had a title policy issued in connection with their 2004 mortgage, then the Campbells would not qualify for the refinance rate and would be entitled to no damages from First American.  In this respect, the Court is concerned that the Campbells may not have typical claims and may not be adequate class representatives, as will be discussed in more detail in the next section.

### 4.      Adequate Class Representative

Finally, the Court must find that the representative parties, in this case, the Campbells, "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).[6]

---

[5] As it now stands, Plaintiffs assert—with some evidentiary support—that First American had an absolute duty to ascertain whether the Campbells and all other similarly situated refinancers had prior title policies and charge the refinance rate accordingly.  The evidence suggests that, for the bulk of the class period, First American did nothing to ensure this obligation (absolute or otherwise) was met by its agents and that First American failed to train its agents to disclose the discounted rate and/or to investigate whether a refinancer qualified for the rate.  Given this void, agents developed idiosyncratic practices for charging the refinance rate with at least some agents operating under a "don't ask, don't tell" practice.

Defendant argues that the Campbells are not adequate class representatives given the unique

facts that have come to light regarding their first mortgage, including, as just discussed, the lack

of proof that their 2004 mortgage from a private lender included the issuance of a title policy.

The Court agrees.  Even assuming Plaintiffs can ultimately succeed on the merits of their legal

theory that First American is essentially strictly liable for any case in which a person had a prior

qualifying title policy and did not receive the refinance rate, the Campbells, to date, have not

been able to provide any reliable evidence that they had a qualifying prior title policy.  Thus,

Plaintiffs have not met the burden of proving they are adequate class representatives because, on

the current record, it is not clear that they are even members of the class.  See Amchem Prods.,

Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) (reiterating that "a class representative must be

part of the class and 'possess the same interest and suffer the same injury' as the class

members.") (internal quotations and citations omitted).

Because Plaintiffs have the burden of showing an adequate class representative, the

Court's finding that the Campbells are inadequate representatives could justify a denial of the

pending motion.  However, in this case, Plaintiffs have countered Defendant's challenge to the

adequacy of the Campbells by explicitly requesting leave to substitute and naming at least one

individual, Bernard Loef, who is "willing and able to serve as a substitute class representative

should the Court in any way doubt [the Campbells'] typicality and adequacy to serve." (Pls.

---

[6] To the extent that Rule 23(a)(4) also requires the Court to consider whether counsel is qualified to represent the class, the Court addresses that requirement later in this order given the overlap with Rule 23(g). See infra III.D; see also Donovan v. Philip Morris USA, Inc., --- F.R.D.---, 2010 WL 2532650 at * 7 (D. Mass. 2010) (explaining that Rule 23(a)(4) "requires a two part showing: the moving party must show that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.") (internal quotations omitted).

Reply (Docket # 93) at 6.)  Given this potential solution to the class representative problem,[7] the

Court continues its analysis of the proposed class to determine what type of class action could be

maintained with an adequate class representative.[8]

## C.  The Rule 23(b) Requirements for Various Types of Class Actions

If a proposed class can meet its burden on the four Rule 23(a) prerequisites, the Court

must then determine what type of class action can be maintained.  Rule 23(b) lists three different

types.  In their motion, Plaintiffs assert that the proposed class could be certified under Rule

23(b)(1)(A), (b)(2) and (b)(3).

### 1.  Rule 23(b)(1)(A)

A class should be certified under Rule 23(b)(1) if prosecution of individual actions

"would create a risk of inconsistent or varying adjudications with respect to individual members

of the class which would establish incompatible standards of conduct for the party opposing the

class," Fed. R. Civ. P. 23(b)(1)(A).  Generally, "[c]ertification under Rule 23(b)(1)(A) is . . . not

appropriate in an action for damages." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180 (9th

Cir . 2001).  In the Court's assessment, this case is primarily an action for damages and, as a

result, the action is unlikely to establish incompatible standards of conduct for First American.

---

[7] Defendant's Sur-Reply correctly notes that the proffer of Mr. Loef as a substitute class representative is "belated" and arguably should have been made by separate motion (Def. Sur-Reply (Docket # 96) at 3-4.)  However, Defendant offers no substantive objection to Mr. Loef and puts forth no basis for the Court to immediately doubt Mr. Loef's ability to serve as an adequate class representative.

[8] In choosing to forego a simple denial without prejudice, the Court has considered the time and effort expended by the parties and this Court in connection with the pending motion.  In the Court's assessment, the voluminous filings made in connection with the pending motion represent a significant effort and thoughtful argument by both sides. As a result, the motion is entitled to the Court's full consideration.  Following the spirit and letter of Rule 23 requires this Court to attempt to provide the parties with a certification decision as soon as practicable without requiring the parties to needlessly reinvent the wheel.  In an exercise of its discretion, the Court has attempted to chart a path that meets these goals and makes an efficient use of both the Court's and the parties' resources.

Additionally, the court notes that in its review of many other decisions involving certification of title insurance overcharge classes, it has found no classes currently certified under this subsection. For these reasons, the Court refuses to find that this class action is properly maintained under Rule 23(b)(1)(A).

### 2. Rule 23(b)(2)

A class action should be certified under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); see, e.g., Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 162 (2d Cir. 2001) (Rule 23(b)(2) "is intended for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury."). Classes certified under this subsection are mandatory classes and have no right of opt-out. On the current record, Plaintiffs have not shown that First American has affirmatively acted in a manner that would justify injunctive or declaratory relief to the entire proposed class.

As noted above, this case is primarily an action for damages. Any damages class would need to be separately certified with a right of opt-out allowed. At this juncture, the Court believes that certifying two classes (a mandatory, declaratory relief class under this subsection as well as an opt-out damages class) is not appropriate and would unnecessarily muddy the waters.[9] See, e.g., Brown, 2010 WL 2870694 at *7 (remanding a class action that was dually certified for

---

[9] In denying the Defendant's Motion to Dismiss for failure to exhaust administrative remedies, the Court relied in part on the fact that it did not appear that the Superintendent of Insurance could provide damages. However, it is clear that the Superintendent could provide a ruling requiring First American to comply with its filed rates or requiring amendment of those rates. The Court remains concerned that any type of injunctive or declaratory relief in this case is better pursued before the Maine Superintendent of Insurance to the extent that federalism concerns might be implicated.

failure to properly notice and allow opt-out of the damages class).  Notably, the case Plaintiffs primarily rely upon in support of certification of this type of mandatory class is <u>Mitchell-Tracey v. United Gen. Title Ins. Co.</u>, 237 F.R.D. 551 (D. Md. 2006).  However, after the briefing on this motion was complete, Mitchell-Tracey was decertified.  <u>See</u> <u>Mitchell-Tracey</u>, 2010 WL 1837723 (D. Md. May 5, 2010).  Given this development, Plaintiffs have failed to bring to this Court's attention a compelling and adequately similar case which received certification under Rule 23(b)(2).  Therefore, Plaintiffs' request for certification of a mandatory class under Rule 23(b)(2) will be denied without prejudice.

### 3.  Rule 23(b)(3)

The Court is left to consider whether the proposed class can be maintained under Rule 23(b)(3).  Rule 23(b)(3) is essentially "a joinder device for consolidating separate but similar claims."  <u>Tardiff v. Knox County</u>, 365 F.3d 1, 4 (1st Cir. 2004).  This subsection requires the Court to find: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The rule explicitly lists the following factors for the Court to consider in making this determination:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Id. Having considered all of these factors, the Court finds on the current record that the proposed class meets the requisites of predominance and superiority and can be maintained as a Rule 23(b)(3) class.

### a. Predominance

The predominance inquiry essentially asks the same question posed as commonality under Rule 23(a)(2), however, the bar is set significantly higher. See In re PolyMedica Corp., 432 F.3d 1, 4 n.5 (1st Cir. 2005) ("This [predominance] requirement, although reminiscent of the commonality requirement of Rule 23(a), is far more demanding because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.") (internal quotations and citations omitted). At this juncture, the Court concludes that Plaintiffs can meet his higher standard because a number of legal questions can and should be answered on a class-wide basis. These questions include the following:

(1) In accordance with 24-A M.R.S.A § 2316 and the First American's Filed Rates, did Defendant have an absolute duty to charge a class member its filed refinance rate?

(2) Absent an absolute duty to charge the refinance rate, did Defendant at least have a duty to exercise reasonable care in determining which rate to charge a refinancer?

(3) What does reasonable care require:

    a. Did First American have a duty to disclose the availability of the refinance rate and explicitly request proof of prior title insurance from each borrower?

    b. Alternatively, did First American have a duty to procure and examine the HUD-1 Statement of each refinancer and charge its filed refinance rate so long as lines 1108-1109 were filled in?

    c. Was it unreasonable for First American to not assume that any prior institutional mortgage (pre-2008) included a lender's title policy?

In arguing that predominance cannot be met, Defendant skips over these common legal questions and focuses on the alleged lack of "common proof." (Def. Resp. (Docket # 87) at

16

14-28.)   Of course, the Court cannot determine if there is "common proof" until it has determined what has to be proved.  Depending on the answers to the common legal questions, it may be that the class becomes unmanageable or that subclasses are needed.  However, with respect to all four of the claims pressed by Plaintiffs, these significant legal questions predominate.  See, e.g., Mims, 590 F.3d at 308 ("The district court was not required to determine that every class member had suffered damages as a prerequisite to class certification.") (citing Kohen v. Pacific Investment Mgmt. Co., LLC, 571 F.3d 672, 676 (7th Cir. 2009)).

The second problem with Defendant's "common proof" argument is that it goes to the heart of Plaintiffs' theory of the case.  Plaintiffs argue, in part, that First American blatantly disregarded its duty to establish a standard practice of common proof for when to charge the refinance rate and to then audit and maintain records in accordance with that standard practice. Assuming for the moment that Plaintiffs' legal argument is correct, the lack of common proof would serve as a basis for establishing liability under Plaintiffs' theory.

In finding that common legal questions predominate, the Court notes that other courts have similarly found predominance for claims of unfair trade practices,[10] breach of implied contract,[11] unjust enrichment,[12] and money had and received.[13]

---

[10] See, e.g., Alberton, 247 F.R.D. at 481 (finding predominance for the claim under Pennsylvania Unfair Trade Practices Act); Markocki v. Old Republic Nat'l Title Ins., 254 F.R.D. 242, 251 (E.D. Pa. 2008) (same); Slapikas, 250 F.R.D. at 247-48 (same).

[11] See, e.g., Alberton, 247 F.R.D. at 480; Hamilton, 266 F.R.D. at 169 & 172; Mims, 254 F.R.D. at 487 ("Common issues of fact predominate with regard to Plaintiff's state law claims."), aff'd in relevant part, 590 F.3d at 307-08; Slapikas, 250 F.R.D. at 245-46.

[12] See, e.g., Alberton , 247 F.R.D. at 480; Lewis, 265 F.R.D. at 543, 552-53; Hamilton, 266 F.R.D. at 169 & 172; Mims, 254 F.R.D. at 487 ("Common issues of fact predominate with regard to Plaintiff's state law claims."), aff'd in relevant part, 590 F.3d at 307-08; Perez, 2009 WL at *6 (finding common issues predominate with respect to the unjust enrichment claim); Markocki, 254 F.R.D. at 251; Slapikas, 250 F.R.D. at 248.

[13] See, e.g., Alberton , 247 F.R.D. at 480; Hamilton, 266 F.R.D. at 169 & 172; Mims, 254 F.R.D. at 487 ("Common issues of fact predominate with regard to Plaintiff's state law claims."), aff'd in relevant part, 590 F.3d at 307-08; Markocki, 254 F.R.D. at 251.

### b.    Superiority

Most recently, the First Circuit has indicated that, in evaluating whether superiority is satisfied, the district court should consider, "whether the putative class members could sensibly litigate on their own for these amounts of damages." Gents v. Bouchard Transp. Co., Inc., 596 F.3d 64, 68 (1st Cir. 2010).  In this case, there is no doubt that damages per putative class member are small and could not be litigated on their own.  For this reason, the Court finds that the class members' interests in individually controlling the prosecution of separate actions is, at best, minimal.

Additionally, putting aside for the moment any challenges in determining who is eligible for damages, calculation of damages will follow a simple formula: each eligible refinancer would receive $0.75 per $1,000 of their original mortgage.  Thus, with respect to the predominate legal questions and the calculation of damages, the class action is manageable and an overall efficient means of litigating this dispute.  In so finding, the Court does not mean to discount the potential challenges that may arise once the predominate legal questions are answered and it comes time to determine who, if anyone, is entitled to damages.  At this juncture, nothing would prevent Defendant from moving to decertify the class or to revise the class definition.  See Tardiff, 365 F.3d at 6 ("If a large number of class members turn out to present non-common issues as to liability, the court may have to consider narrowing or de-certifying the class.").  For now, the Court is satisfied that a class action is a superior means for proceeding with this matter.

### D. Appointment of Class Counsel Pursuant to Rule 23(g)

Finally, in connection with any class certification, Plaintiffs request that Roddy, Klein & Ryan, Molleur Law Offices, and Bonnett, Fairbourn, Friedman & Balint, P.C., be appointed co-counsel for the class. Based on the Court's review of the materials submitted in conjunction with the pending motion and the entire docket, the Court finds: (1) that these firms have adequately identified and investigated the potential claims in the action; (2) that they have significant experience handling similar types of class actions; and (3) that they have the necessary knowledge and resources to represent the class. Thus, the Court will appoint Roddy, Klein & Ryan, Molleur Law Offices, and Bonnett, Fairbourn, Friedman & Balint, P.C. as class counsel.

### IV. CONCLUSION

As explained herein, the Court finds the current record supports certification of the following class under Rule 23(b)(3):

> **All persons who, at any time between September 17, 2002 and the present (the "Class Period"):**
>
> **(1) refinanced a prior mortgage on residential property in Maine;**
> **(2) the prior mortgage was issued within two years of the refinancing;**
> **(3) the prior mortgage was insured by a title insurance policy issued by any title insurance company licensed to do business in the State of Maine on the date of issuance;**
> **(4) purchased title insurance from First American in connection with the refinancing; and**
> **(5) paid an amount more than First American's statutorily approved refinance rate for a lender's title insurance policy.**

However, on the current record, the Court declines to find that the Campbells are adequate representatives of this class. Thus, the Court's decision to certify is contingent on Plaintiffs submitting an amended complaint with a substitute class representative with 30 days of

this order.  Absent such a filing, the Court will enter an order denying certification.  Upon the filings of an amended complaint with one or more substitute class representatives, Defendant shall be entitled to conduct necessary discovery into the adequacy of the proposed class representatives.  If the parties cannot come to an agreement on the extent and timing of that discovery, they may request a hearing before the magistrate judge.  Defendant may file a motion to challenge the adequacy of any substitute class representatives within 120 days of this order (a deadline that may be subject to extension upon a showing of good cause).

Once the adequacy of the class representatives have been finally determined, the Court will issue an appropriate order seeking plans and proposed notices in order to satisfy the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).

For the reasons provided herein, Plaintiffs' Motion for Class Certification (Docket # 85) is GRANTED IN PART AND DENIED IN PART.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 4th day of August, 2010.