UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BERNHARD LOEF, on behalf of himself )
and others similarly situated, )
 )
    Plaintiffs, )
 )
v. )
 ) Docket No. 08-cv-311-P-S
FIRST AMERICAN TITLE INSURANCE )
COMPANY, )
 )
    Defendant. )
 )

**ORDER ON MOTION TO DECERTIFY CLASS**

Before the Court is a motion by Defendant First American Title Insurance Company, titled: "Motion to Decertify Based on Plaintiff's Failure to Establish Typicality and Adequacy of Representation" (Docket # 127). The Motion, along with its accompanying request for oral argument, is hereby DENIED.[1]

**I. PROCEDURAL BACKGROUND**

The Court's discussion of the pending motion assumes familiarity with this Court's August 4, 2010 Order on Motion for Class Certification (Docket # 117) ("Order Certifying Class"), in which this Court granted in part and denied in part Plaintiff's initial motion for class certification.[2] In the Order Certifying Class, the Court indicated its concerns that the named plaintiffs at the time, Douglas and Denise Campbell, could not serve as adequate representative of the following class:

---

[1] The Court notes that it received and reviewed both Plaintiff's Notice of Supplemental Authority (Docket # 133) and Defendant's Response to Plaintiff's Notice (Docket # 134) and determined that these supplemental filings have no impact on the Court's decision on the pending Motion.

[2] The Court incorporates all relevant parts of its August 4, 2010 Order into this decision.

> **All persons who, at any time between September 17, 2002 and the present (the "Class Period"):**
>
> (1) refinanced a prior mortgage on residential property in Maine;
> (2) the prior mortgage was issued within two years of the refinancing;
> (3) the prior mortgage was insured by a title insurance policy issued by any title insurance company licensed to do business in the State of Maine on the date of issuance;
> (4) purchased title insurance from First American in connection with the refinancing; and
> (5) paid an amount more than First American's statutorily approved refinance rate for a lender's title insurance policy.

At the time, Plaintiffs had indicated the ability and willingness to name Bernhard Loef as a substitute class representative. Based on this representation, the Court conditionally certified the just-described class under Rule 23(b)(3) and ordered the filing of an amended complaint naming a suitable class representative for the above-described class. The Court also allowed for Defendant to conduct discovery on any new proposed class representative and to challenge the adequacy by filing a motion with the Court. Defendant's pending Motion to Decertify does just that.

## II. LEGAL STANDARD FOR DETERMINING THE ADEQUACY OF A CLASS REPRESENTATIVE

The named plaintiff in any proposed class action bears the burden of establishing that he "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To do this, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) (internal quotations and citations omitted).

## III. CURRENT FACTUAL RECORD AS TO NAMED CLASS REPRESENTATIVE

On November 1, 2005, Plaintiff Bernhard Loef, along with his then-wife Laurice, refinanced their home in Norway, Maine. As a result of that transaction, WMC Mortgage Corporation provided them with a mortgage in the amount of $105,000. The settlement agent for this transaction was Warranty Title Company, which, at the time, was an independent title agent for Chicago Title Insurance Company. The HUD-1 Statement for the Loefs' November 1, 2005 closing shows the Loefs' paid $383.75 as a premium for a lender's title insurance policy to be provided by Chicago Title Insurance Company (at lines 1108-1109). (See Ex. C to Third Am. Compl. (Docket # 119-3) ("2005 HUD-1 Statement").) Chicago Title in fact issued a title policy on the Loef property to WMC Mortgage Corporation on November 3, 2005. (See Ex. D. to Third Am. Compl. (Docket # 119-4).)

Less than two years later, on January 30, 2007, the Loefs refinanced the property again with a mortgage from New Century Mortgage Company in the amount of $127,500.00. (See Ex. E to Third Am. Compl. (Docket # 119-5) ("2007 HUD-1 Statement").) The settlement agent for this transaction was First Suburban Title Company. The 2007 HUD-1 Statement reflects that the Loefs paid $402.94 as a total premium for a lender's title insurance policy to be provided by First American Title Insurance Company (line 1108). Line 1109 of the 2007 HUD-1 Statement lists the costs of lender's coverage as $377.94. As alleged in the Third Amended Complaint, this amount reflects the standard rate of $1.75 per $1,000 of mortgage principal, plus a $50 survey fee and an additional ten percent surcharge for the Eagle policy ($29.81). (See Third Am. Compl. ¶¶32-33.) If the Loefs had been charged First American's refinance rate of $1.00 per

$1,000 mortgage principal up to the amount of the previous $105,000 mortgage, the Loefs would have saved approximately $86.[3]

As Mr. Loef testified at his deposition, he has had no contact with First American prior to this lawsuit. Likewise, he has no recollection of having any particular communication with First Suburban regarding title insurance or the rates being used to calculate the title insurance premium. On the record currently before this Court, it appears that Mr. Loef was not aware that a lower refinance rate existed at the time of the 2007 closing. Moreover, there is no evidence to suggest that the Loefs were asked to produce any documentation to determine if they qualified for a discounted title refinance rate in connection with the 2007 title insurance policy. (See Loef Dep. at 107.)

By November 2008, the Loefs had defaulted on their mortgage and their lender initiated foreclosure proceedings on the Norway property. (See Ex. B to Preston Decl. (Docket # 127-3).) In early 2009, the Loefs divorced and Laurice received court permission to resume using her maiden name, Laurice Day. The divorce judgment indicates the Norway property was awarded to Bernhard Loef. However, the judgment goes on to explain that the property was to be sold if Mr. Loef was "unable to refinance the real estate or otherwise cause [Laurice Day] to be released from the debt thereon within 120 days." (Divorce Judgment, dated Feb. 11, 2009, Docket No. LEW-FM-08-787 (Ex. C to Preston Decl. (Docket # 127-4).)

By all accounts, Mr. Loef has not sold the property, nor has he refinanced the property or caused his ex-wife to be released from the mortgage on the property. Foreclosure proceedings remain pending on the Norway property. At his deposition, Mr. Loef acknowledged that he still

---

[3] The calculation would be as follows: ($1.00 x 105) + ($1.75 x 22.5) = $144.80, plus three endorsements ($75), plus the ten percent surcharge for Eagle policy ($21.98), plus survey affidavit ($50.00) for a total of $291.78.

owns the property. However, he is no longer residing there or making any payments on the outstanding mortgage. (Loef Dep. (Docket # 127-2) at 42-43.)

The Court's prior order provided the necessary background on title insurance in Maine as well as First American's practices in Maine. (See Order Certifying Class at 2-5.) In connection with the pending Motion, the Court is required to consider one additional aspect of First American's title insurance business in Maine: the Eagle Loan Policy. In 1997, First American introduced the Eagle Loan Policy in Maine. An Eagle Loan Policy "offers considerably more coverage" than First American's standard loan policy by having "fewer exceptions" and "automatically includ[ing] certain endorsements." (Watts Decl. (Docket # 127-8) ¶3.) "The Eagle brand of lender's title insurance is unique to First American and is not sold by any other underwriter in Maine." (Id.) In its initial rate filing for its Eagle policies, First American tied the rates for these policies to its previously filed standard rates "plus an additional 10% of the standard rate." (First Am. Rate Filing Letter, dated August 29, 1997 (Ex. A to Third Am. Compl. (Docket # 119-1).)

First American has maintained a separate Eagle Policy Premium Rate Schedule in Maine since 2002. (See Watts Decl. (Docket # 127-8) ¶6.) In the 2006 version of this rate schedule, First American explains that the rate for the Eagle Loan Policy is generally the standard rate "plus $50 for ALTA 9 and 8.1.", "plus $25 each" for up to five additional endorsements that may be applicable, then a ten percent premium on that total amount is added on. Until April 2008, First American's Eagle Policy Premium Rate Schedule provided that the refinance rate on an Eagle Policy was only available if the prior policy was also an Eagle policy. First American represents that it had very few occasions to issue an Eagle Loan Policy under these refinance rules because "Eagle Loan Policies were infrequently ordered in Maine until very recently (i.e.

[around 2009])." (Watts Decl. ¶9.) In 2008, First American "simplify[ied] the application of its rates" and revised the Eagle Policy Premium Rate Schedule to reflect that the refinance rate was available if there was a prior loan policy of any type so long as the other requirements for the refinance rate were met. (Watts Decl. ¶10.)

## IV. DISCUSSION

Defendant's Motion to Decertify presents three arguments. First, Defendant asserts that Mr. Loef cannot serve as an adequate class representative without joinder of Ms. Day, his ex-wife and co-borrower in connection with the 2007 refinance. Second, First American argues that Mr. Loef is not a suitable class representative because he did not qualify for the refinance rate under the unique refinance rules then in place for Eagle policies. Third, Defendant argues that this Court should find Mr. Loef to be an inadequate class representative because of his "history of financial issues" and inability to pay any of the costs associated with bringing this action. (Def. Mot. (Docket # 127) at 10.) The Court addresses each of these meritless arguments in turn.

### A. Joinder of Ms. Day is Not Required

To the extent Defendant has cited non-class action cases in support of their joinder argument, those cases are simply inapposite. Federal Rule of Civil Procedure 19(d) clearly and explicitly limits the applicability of the joinder rules found in Rule 19 in the class action context. As other courts have held, the language of Rule 19(d) means that Rule 19 applies only to the extent that "it does not conflict with Rule 23." Thompson v. Jiffy Lube Int'l, Inc., 505 F. Supp. 2d 907, 922 (D. Kan. 2007) (following Shimkus v. Gersten Co., 816 F.2d 1318, 1321 (9th Cir. 1987)). In this case, the Court has already determined that the size of the plaintiff class is so numerous that joinder is impractical. (See Order Certifying Class (Docket # 117) at 9.) Given

this finding, the Court simply does not believe Defendants can press for the joinder of one specific class member as a named plaintiff.

To the extent that Ms. Day has a claim against First American, she is simply a member of the class. First American speculates that Ms. Day may opt-out of the class and separately proceed against First American to recover damages for the alleged $86 title insurance overcharge. While there is nothing in the record to support this speculation, the Court is satisfied that were Ms. Day to commence such an action after Mr. Loef obtained payment pursuant to a judgment or settlement of this case, First American would be protected by their ability to join Mr. Loef in that later individual action and thereby ensure that First American is not subject to incurring double judgments on any claim arising out of an overcharge on the 2007 policy issued in connection with the Loefs' refinancing.[4]

### B. Mr. Loef's Eagle Loan Policy Does Not Foreclose His Membership in the Class

First American argues that Mr. Loef's purchase of an Eagle policy raises unique defenses that will "dominate this litigation." (Def. Reply (Docket # 131) at 4.) However, in the Court's assessment, the legal questions that predominate Mr. Loef's claims at this stage of the litigation are the very same legal questions that predominate for the rest of the class: Faced with a refinancing borrower, what were First American's disclosure and ascertainment obligations in light of Maine statute and its Maine Rate Schedule? It is clear on the facts presented that Mr. Loef qualified for the refinance rate on a standard policy. It does not appear that the refinance rate was disclosed to him. Moreover, the current minimally developed record provides no information as to what led First Suburban, acting on behalf of First American, to write a more

---

[4] Ultimately, the issues raised by First American's joinder arguments are likely to be typical of the class since it is not at all uncommon for an individual to purchase and refinance residential property with a spouse or other partner. The Court is satisfied that any legal issues regarding how to award or apportion damages First American may owe any such partners is best addressed if, and when, the common legal questions regarding liability are resolved in favor of the Class.

7

expensive Eagle policy instead of the standard policy with the refinance rate. At this juncture, Mr. Loef can readily assert that he would have received the refinance rate if First American and its agents had met its ascertainment and disclosure obligations. Thus, he is similarly situated to other class members.

In short, the mere fact that Loef's 2007 title insurance policy was an Eagle policy does not support a finding that Mr. Loef is an inadequate or atypical class representative.

### C. Mr. Loef's Financial History

Mr. Loef declared personal bankruptcy in 2006 in connection with back problems that no longer allowed him to work as a truck driver. (Loef. Dep. at 114-115.) He is currently facing foreclosure on the Norway property. Given Mr. Loef's admitted financial difficulties and limited income, he is not in the position to fund the costs of this litigation. Thus, Defendant argues that Mr. Loef is "financially incapable" of representing the class. (Def.'s Mot. (Docket # 127) at 9.)

Following Lessard v. Metropolitan Life Ins. Co., 103 F.R.D. 608 (D. Me. 1984), this Court refuses to declare Mr. Loef an inadequate class representative based on his financial history and current financial resources. See Lessard, 103 F.R.D. at 612 ("This Court declines, as a matter of policy, to preclude persons from representative status solely because they lack erudition or financial resources.") The Court has previously appointed class counsel in this matter after a full consideration of all of the factors listed in Rule 239(g), including a finding that counsel had the necessary resources to represent the class. In response to Defendant's argument, Class counsel has indicated that they will advance the costs and expenses to prosecute this case. (See Ryan Decl. (Docket # 130) ¶6.) Thus, there is no need for Mr. Loef to personally fund the costs of this litigation. See, e.g., Borcherding-Dittloff v. Transworld Systems, Inc., 185 F.R.D.

558, 564 (W.D.Wis. 1999) (finding "plaintiff's financial position, inability to pay legal fees and counsel's advancement of legal fees d[id] not render her inadequate as a class representative").

In short, Plaintiff has established that Mr. Loef refinanced a prior mortgage on a residential property in Maine in 2007, that his prior mortgage was issued within two years of the refinancing, and that the prior mortgage was insured by a title insurance policy issued by a duly licensed title insurance company. The record also reflects that Mr. Loef purchased title insurance from First American in connection with the 2007 refinancing and paid an amount more that First American's statutorily approved refinance rate for this lender's policy. Thus, Mr. Loef presents with a claim that is typical. Having reviewed all portions of Mr. Loef's deposition that were provided in connection with this Motion, the Court finds no reason to doubt that Mr. Loef can be an adequate class representative.

## V. CONCLUSION

For the reasons just explained, the Defendant's Motion to Decertify (Docket # 127) is hereby DENIED.

SO ORDERED.

                                                         /s/ George Z. Singal
                                                         United States District Judge

Dated this 4th day of April, 2011.