UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BERNHARD LOEF, on behalf of himself )
and others similarly situated, )
 )
                Plaintiffs, )
 )
v. )
 ) Docket No. 2:08-cv-311-GZS
FIRST AMERICAN TITLE INSURANCE )
COMPANY, )
 )
                Defendant. )

**ORDER ON PENDING MOTIONS**

Before the Court are the following submissions: (1) Defendant's Supplemental Brief Regarding Class Notice Plan (Docket # 158), (2) Plaintiff's Supplemental Brief on Class Notice Plan (Docket # 159) and (3) Defendant's Motion to Strike Declaration of Shannon Wheatman (Docket # 166). The Court first addresses Defendant's Motion to Strike and then addresses the parties' remaining disagreements regarding how to provide proper notice to the class.

**I.    MOTION TO STRIKE**

Defendant's Motion to Strike Declaration of Shannon Wheatman (Docket # 166) asks this Court to exclude from its consideration the declaration and proposed amended notices submitted by Dr. Wheatman (Docket # 159-2). As detailed in her curriculum vitae, Dr. Wheatmen has served as a class action notice expert in many class actions around the country. (See Wheatmen C.V. (Docket # 159-2) at Page ID 2830-2832.) However, Defendant apparently remained unaware that Dr. Wheatman had been retained by Plaintiff in connection with the present case. Given the ongoing discovery, Defendant believes that Dr. Wheatman and her opinions should have been disclosed to Defendant prior to September 29, 2011, when Plaintiff filed Dr. Wheatman's Declaration as part of its supplemental submission on the class notice plan.

In the absence of a prior disclosure, Defendant claims that Plaintiff's filing of the Wheatman Declaration reflects an "ambush", a "bait-and-switch," "shadow-boxing" and an effort to "sandbag" Defendant. (Def. Mot. (Docket # 166) at 1, 5-6.) Defendant goes on to assert that the submitted expert testimony is simultaneously "prejudicial to First American, and an immense waste of time." (Id. at 9.) Defendant's overstated complaints are without merit.

To the extent Defendant claims the submission of the Wheatman Declaration reflects some sort of discovery violation, this argument ignores the limited nature of the issue on which Dr. Wheatman opines. As Plaintiff confirms in its Response to the Motion to Strike (Docket # 167), Dr. Wheatman is not a merits witness. Rather, Dr. Wheatman was retained as an expert in developing a notice by publication plan. Notably, the Federal Judicial Center's 2010 Class Action Notice and Claims Process Checklist specifically recommends that the Court have a "qualified professional" or other expert weigh in on the adequacy of a notice plan, particularly when one or more parties are proposing to forego Rule 23(c)(2)'s requirement of individual notice. See Federal Judicial Center, Judges Class Action Notice and Claims Process Checklist & Plain Language Guide, 1-2 (2010). In short, it would have been wholly insufficient for Plaintiff to propose a plan of notice by publication without including a declaration of a professional with credentials similar to Dr. Wheatman.

While not specifically challenging Dr. Wheatman's credentials, Defendant invokes Rule 702 and argues that the opinions found in the Wheatman Declaration are really improper legal opinions and conclusions that cannot assist the Court. To the extent that Wheatman's Declaration contains any legal conclusions that must be finally made by the Court, the discussion that follows should make it abundantly clear that the Court had not accepted those legal opinions or given them any weight. Nonetheless, Dr. Wheatman's Declaration has also provided the

Court with other helpful information that is properly considered in determining how to proceed with notice in this case. Defendant's suggestion that the Court strike the declaration and ignore all of this information leaves the Court less able to determine how to move forward with class notice. In short, Dr. Wheatman has provided specialized knowledge that will assist the Court in fashioning a class notice plan. Therefore, the Court DENIES the Motion to Strike.

## II. THE NOTICE PLAN

In the Court's view, the parties' supplemental briefs raise three issues for the Court's review: (1) what is the best practicable notice that can occur by mail, (2) what is the best practicable notice that can occur by publication, and (3) who should pay for distribution of the best practicable notice.

### A. Individual Notice by Mail

In the circumstance of this case, Federal Rule of Civil Procedure 23(c)(2)(B) requires that "the best notice . . . practicable . . . *include[e] individual notice to all members who can be identified by reasonable effort*." Id. (emphasis added). The Court in fact sent this case to mediation to determine "when and how the parties will compile a proposed list of class members to receive mailed notice" while indicating it would accept supplemental briefing on the issue should the parties fail to reach agreement. (See June 7, 2011 Order on Pending Motions (Docket # 144) at 2.) Ultimately, after mediation, it appears that the parties have managed to compile a list containing names and addresses of 76,522 likely Maine residential refinancers who did not apparently receive the refinance rate. (See Ryan Decl. (Docket # 162) ¶¶ 3, 10-12.) This list was winnowed from a list originally created by Defendant from its own electronic databases; the

3

original list contained 98,686 entries (hereinafter, the "FA List"). For purposes of this Order, the Court refers to the winnowed list of 76,522 likely refinancers as the "Amended FA List."

In the Court's assessment, the Amended FA List reflects a "reasonable effort" as required by Rule 23. However, Plaintiff now asserts that the parties' reasonable efforts have yielded an insufficient list that is both over-inclusive and under-inclusive. In fact, Plaintiff maintains that he is unable to "positively identif[y]" any of the over 75,000 persons listed as class members. (Pl. Supp. Brief at 6.) As result, Plaintiff seeks to have this Court grant the extraordinary remedy of foregoing individual notice. Before considering whether such a remedy is proper, the Court first analyzes Plaintiff's claim that the Amended FA List is both under-inclusive and over-inclusive.

First, Plaintiff's assertion that the Amended FA List is significantly under-inclusive is without reasonable support in the record. The evidence in support of the alleged under-inclusiveness amounts to one paralegal noting that one First American agent had produced a spreadsheet that contained "several policies" not listed on the FA List. In short, on the current record, the Court does not find the Amended FA List to be under-inclusive. Nonetheless, the Court notes that the mere fact that several class members may not receive mailed notice does not justify withholding individual notice from the remaining class members who have been identified through a reasonable effort.

Next, the Court turns to Plaintiff's argument that the Amended FA List is over-inclusive. Notably, when the Court certified this class the record suggested that the class contained "at least 167 persons." (Order on Mot. for Class Certification (Docket # 117) at 9.) While Plaintiff fully expected to find many more class members, Plaintiff does not believe the actual class contains in excess of 75,000 class members. (See Pl. Reply (Docket # 163) at 2 (noting that "only a

fraction" of the persons list on the Amended FA List "may be class members").) Nonetheless, neither side has attempted to quantify the degree of over-inclusiveness.[1]

Ultimately, the Amended FA List reflects the parties' efforts to compile a list of persons who, since September 17, 2002, refinanced a prior mortgage on a residential property in Maine, purchased title insurance from First American in connection with the refinancing and paid more than First American's statutorily approved refinance rate for lender's title insurance. Thus, the Amended FA List targets three of the five requirements listed in the class definition. However, the List does not target only those refinancers who had a prior lender's title policy and were refinancing within two years of the issuance of that prior lender's policy; which are the other two requirements listed in the class definition. Without the automated ability to winnow the list based on these other two requirements, it is a foregone conclusion that the list will be over-inclusive.

Plaintiff attempts to analogize its case to In Re Domestic Air Transp. Antitrust Litig., 141 F.R.D. 541 (N.D. Ga. 1992). However, in Domestic Air, the record suggested that record review necessary to compile a class list would take "decades to accomplish." Id. at 547 & n. 16. Quite simply, the record here does support a similar finding.[2] Absent such an extraordinary finding, The Court may not waive the "unambiguous requirement" that "[i]ndividual notice . . . be sent to

---

[1] This failure distinguishes this case from Macarz v. Transworld Systems, Inc., 201 F.R.D. 54 (D. Conn. 2001), a case cited by Plaintiff. In Macarz,, the defendant estimated that the list for mailed notice would be "twenty-five percent over-inclusive." Id. at 61. The Court also notes that the record in Macarz contained helpful cost estimates both for preparing the list and mailing. Neither side has attempted to provide this Court with similar cost estimates. See id.

[2] In fact, Plaintiff has made no attempt to estimate the number of man hours it would take to review closing files for 76,522 refinances to determine whether the refinance falls within the class definition. In order to be relieved from the default requirement of individual notice, Plaintiff necessarily should have attempted to estimate the amount of time required to conduct such a search. The Court does acknowledge that without providing any actual estimate Defendant argues that "manual review of tens of thousands of individual transaction files would cause immense delay." (Def. Supp. Brief (Docket # 158) at 7.)

all class members whose names and addresses may be ascertained through reasonable efforts." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 & 176 (1974).

Because discovery has been ongoing since the initial supplemental briefs were filed, it may be that Plaintiff can now further winnow the Amended FA List. However, in the absence of a more refined list, the Court will require individual notice be mailed to those persons contained on the Amended FA List. On the current record, the Court concludes that Defendant need not further assist Plaintiff in any attempts to refine the Amended FA List.

### B. Notice by Publication

Plaintiff now argues in favor of providing notice solely by publication. As the above discussion makes clear, the Court does not find that notice by publication alone is sufficient. Nonetheless, given the nature of this class action, which seeks to find a subset of persons who have refinanced a home in Maine in the last ten years, notice by publication is undoubtedly an important step in ensuring notice reaches as many class members as possible.

Upon review of the proposed revision of the form of published notice (Docket # 159-2 at Page ID 2840), the Court APPROVES the form of this notice as revised. On the record presented, the Court believes that this notice should be published on at least one occasion in the following Maine publications:

    Bangor Daily News (Weekday)
    Bangor Daily News (Sunday)
    Biddeford Journal Tribune (Sunday)
    Brunswick Times Record (Weekday)
    Lewiston Sun Journal (Weekday)
    Lewiston Sun Journal (Sunday)
    Portland Press Herald (Weekday)

    Portland Press Herald (Sunday)

    Waterville Morning Sentinel/Kennebec Journal (Weekday)

    Waterville Morning Sentinel/Kennebec Journal (Sunday)

On the record presented and in light of the individual notices to be mailed, the Court sees no benefit to be gained from a one time published notice in Newsweek and will not order Plaintiff to pay for notice in a separate national publication.[3] Plaintiff shall also separately distribute press releases in an effort to amplify to the paid media notice with "earned media" as described by Dr. Wheatman. (Wheatman Decl. ¶¶ 18-19.)

### C. Allocating Cost for Notice to Class

With a notice plan in place, the Court reaches the final outstanding question: who should pay for the implementation of the notice plan? "The usual rule is that a plaintiff must initially bear the cost of notice to the class." Eisen, 417 U.S. at 178. Plaintiff argues that the usual rule should not apply here. Nonetheless, Plaintiff has provided the Court with no actual information about what the costs of their proposed plan would be. To the extent that Plaintiff's supplemental submissions can be read as suggesting that regardless of the actual cost, Defendant should be required to pay because the cost of publication notice reflects faulty recordkeeping by Defendant, that argument is meritless. See Hunt v. Imperial Merchant Services, Inc., 560 F.3d 1137, 1143-44 (9th Cir. 2009) (collecting cases and holding that a district court may exercise its discretion to shift class notice costs *after* a defendant's liability is established), *cert. denied*, 130 S. Ct. 154

---

[3] Dr. Wheatman opines that by publishing a revised one page notice in Newsweek and ten Maine newspapers, notice by publication will reach 76.4 percent of Maine homeowners. (Wheatman Decl. ¶ 10.) The Court notes that the estimate is not broken down to allow the Court to readily determine what percentage of Maine homeowners will be reached without the Newsweek publication. Nonetheless, the Court believes that by requiring mailed notices the reach of the Court's notice plan will exceed 76.4 percent.

(2009). Such an argument improperly seeks to prejudge liability questions that remain for later resolution. Likewise, Plaintiff has made no concrete effort to show that the notice elements laid out in this Order can somehow be done more cost efficiently by Defendant. See <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 363-64 (1978). Thus, on the current record, the Court finds no "special circumstances" that would warrant requiring Defendant to bear the expense of implementing the Court's approved notice plan. <u>Id.</u>

Although Plaintiff has not provided this Court with any cost estimates in its supplemental papers, the Court can foresee that the cost of the notice plan laid out in this Order may be significant. In addition to the costs associated with notice by publication and establishing the necessary website, the costs would include mailing the Long Form Notice (Docket # 159-2 at Page ID 2843-2851). In the Court's assessment, Plaintiff may be able to limit the overall cost of this notice plan by designing a short-form notice (perhaps even a postcard) that directs the persons receiving it to a website containing all of the information in the Long Form Notice. However, the Court can only speculate at this point as to what the overall cost savings might be and whether such a notice can be fashioned that complies with the requirements of Rule 23(c)(2)(B). <u>See, e.g.</u>, <u>Trombley v. Bank of America Corp.</u>, Civil No. 08-cv-456-JD, 2011 WL 3740488 at *2-*3 (D.R.I. August 24, 2011) (approving a short form notice that directed receivers to a website or telephone number where they could receive additional information).

Therefore, the Court hereby ORDERS that Plaintiff file an amended proposed notice plan that complies with this Order on or before March 30, 2012. Said filing shall include:

(1) cost estimates for the publication notice plan and any other costs associated with establishing the necessary website and toll-free number;

(2) cost estimates for mailing the Long Form Notice to names and addresses contained on the Amended FA List as well as any lesser estimate for any proposed refined list that Plaintiff may seek to use for mailed notice to class members;

(3) any proposed short-form notice developed as well as cost estimates for mailing the proposed short-form notice to the names and addresses contained on the Amended FA List as well as any lesser estimate for any proposed refined list that Plaintiff may seek to use for mailed notice to class members; and

(4) an estimated timeline for completing the notice process and a proposed opt-out deadline.

Defendant is free to file any response or objection to Plaintiff's notice plan and cost estimate on or before April 13, 2012. No reply is necessary.

### III. CONCLUSION

As explained herein, Defendant's Motion to Strike (Docket # 166) is hereby DENIED and Defendant's Supplemental Brief Regarding Class Action Notice Plan (Docket # 158) is GRANTED. Plaintiff's Supplemental Brief Regarding Class Action Notice Plan (Docket # 159) is hereby GRANTED IN PART AND DENIED IN PART. The Court ultimately RESERVES RULING on a class notice plan until it has received and reviewed the supplemental filings required by this Order.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 28th day of February, 2012.