UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BERNHARD LOEF, on behalf of himself and others similarly situated, </br></br>              Plaintiff, </br></br>v. </br></br>FIRST AMERICAN TITLE INSURANCE COMPANY, </br></br>              Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) )  Docket No. 2:08-cv-311-GZS |

**ORDER DECERTIFYING CLASS**

Currently pending before the Court is Defendant First American Title Insurance Company's Motion to Decertify Class (ECF No. 208); also pending are the parties' cross-motions for summary judgment (ECF Nos. 185, 202) and Defendant's Motion to Exclude the Testimony of Plaintiff's Expert Birny Birnbaum (ECF No. 207). The Court has also received and reviewed correspondence from counsel bringing to the Court's attention supplemental authority published since the filing of the Motion to Decertify (ECF Nos. 229, 230, 232, 235).

For reasons explained herein, the Court now GRANTS the Motion to Decertify (ECF No. 208) and, in light of that ruling, the Court concludes that the remaining pending motions, which necessarily assume the claims are subject to classwide determination, are MOOT.

**I.      LEGAL STANDARD**

Federal Rule of Civil Procedure 23(c)(1)(C) states that "[a]n order that grants or denies class certification may be altered or amended before final judgment." See also Brown v. Colegio

de Abogados de Puerto Rico, 613 F.3d 44, 50 (1st Cir. 2010) ("Courts may alter [class] certification orders prior to final judgment…."). "Indeed, it is not uncommon to defer final decision on certifications pending completion of relevant discovery." In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 26-27 (1st Cir. 2008). As the Supreme Court has said, "[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." Gen. Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982). For example, "a district court remains free at a later stage to modify or even decertify a class if later evidence disproves the plaintiffs' assertions regarding … the predominance of common issues." In re New Motor Vehicles, 522 F.3d at 30 (Torrella, J. dissenting) (citing Falcon, 457 U.S. at 160). See also id. at 27 (stating that the court may revisit certification "because of the novelty and complexity of the theories advanced and the gaps in the evidence proffered").

In assessing whether class certification remains viable, the Court must consider not only developments of the factual record but also any newly announced legal precedent. Here, this precedent now includes Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011), in which the Supreme Court provided new guidance on what satisfies the commonality requirement of Rule 23(a). Rather than simply identifying common questions, the Wal-Mart majority explained:

> [The classwide] claims must depend upon a common contention…. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.
>
> What matters to class certification … is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

Id. (internal quotations and citations omitted) (emphasis in original). Thus, while even one common question can satisfy Rule 23(a)(2), dissimilar answers to that question among class members may mean that commonality is lacking. See id. at 2556.

The pending motion essentially asks this Court to reconsider certification under this Wal-Mart standard in light of the factual record developed during discovery.

## II.   FACTUAL & PROCEDURAL BACKGROUND[1]

The Court assumes familiarity with its prior orders. See Campbell v. First Am. Title Ins. Co., 644 F. Supp. 2d 126 (D. Me. 2009) (denying motion to dismiss); Campbell v. First Am. Title Ins. Co., 269 F.R.D. 68 (D. Me. 2010) (provisionally certifying class but requiring further information regarding adequacy of substitute class representative). Pursuant to these earlier orders, the following class has been certified by the Court:

> **All persons who, at any time between September 17, 2002 and the present (the "Class Period"):**
>
> **(1)     refinanced a prior mortgage on residential property in Maine;**
> **(2)     the prior mortgage was issued within two years of the refinancing;**
> **(3)     the prior mortgage was insured by a title insurance policy issued by any title insurance company licensed to do business in the State of Maine on the date of issuance;**
> **(4)      purchased title insurance from First American in connection with the refinancing; and**
> **(5)     paid an amount more than First American's statutorily approved refinance rate for a lender's title insurance policy.**

This certification was based on a finding that this class satisfied the four Rule 23(a) factors – numerosity, commonality, typicality, and adequacy – and the Rule 23(b)(3) factors –

---

[1] The facts recounted in this section draw for the materials submitted in connection with the Motion to Decertify as well as the Statements of Material Fact ("SMF") and accompanying declarations and exhibits (ECF Nos. 186-191, 194-198, 200, 203-205, 213, 216-222, 226). Although the Court has reviewed all of these materials, the Court limits its factual recitation to only those facts that are relevant to the certification question.

specifically, "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Campbell v. First Am. Title Ins. Co., 269 F.R.D. 68, 71 (D. Me. 2010) (ECF No. 117) & April 4, 2011 Order (ECF No. 135). On behalf of the class, the Third Amended Class Action Complaint (ECF No. 119) asserts state claims for Violation of Maine's Unfair Trade Practices Act (Count I), Breach of Contract (Count II), Unjust Enrichment (Count III), and Money Had and Received (Count IV).

Since the initial certification of this class over two years ago, the parties have engaged in significant discovery in connection with class notice and in preparation for filing the pending cross motions for summary judgment. During the course of this discovery, it became clear that even simply identifying members of the certified class was a challenging task. (See, e.g., February 28, 2012 Order on Pending Motions (ECF No. 180) at 4 (indicating the parties had developed an over inclusive list of potential class members that contained approximately 76,000 likely Maine refinancers); July 11, 2012 Certification of Compliance with Class Notice Plan (ECF No. 210) (indicating that class notice postcards were ultimately successfully mailed to approximately 47,798 potential class members).)

Moreover, in connection with summary judgment briefing, the Court has received voluminous factual submissions detailing genuine factual disputes as to whether individual class members were entitled to First American's lower refinance rate. (See, e.g., Rice Decl. (ECF No. 197) ¶¶7-10, 12, 15-22 & McClay Decls. (ECF Nos. 189 & 219) ¶¶2-5.) By way of example, Lori Rice of First American conducted a parallel review of nearly 230 policies (and their underlying individual transaction files) identified as overcharges by Plaintiff's class certification

expert, Dr. McClave.[2] (See Rice Decl. ¶5.) Based on that review, Rice, on behalf of First American, maintains that approximately one-third of the identified policies (71 of 230) were not overcharged. (Id. ¶7.) Rather, Rice concluded that 33 of the 71 policies identified as overcharges in fact received the discounted refinance rate (id. ¶9), and 38 of the 71 transactions were not eligible for the refinance rate. (Id. ¶8.) Based on Rice's review of the files, she found different bases for ineligibility, including: (1) the borrower in the refinance transaction was not the same as the borrower or borrowers in the prior transaction (18 transactions); (2) rather than involving a refinance, the transaction involved a home purchase, new second mortgage, or other transaction not eligible for the Refinance Rate (14 transactions); (3) the mortgage being refinanced was not covered by a lender's policy of title insurance (4 transactions); and (4) the property securing the new loan was not the property involved in the loan that was being paid off (2 transactions). (Id.)

Furthermore, for more than half of the remaining transactions (94 transactions), First American could not locate – in either the closing file or First American's back title site – a copy of a loan policy from a prior mortgage transaction within the two-year look back period. (Id. ¶10.) Thus, according to Rice, it was "impossible for anyone to determine whether [these transactions] qualified for but did not receive the discounted rate" because making that determination would require additional information regarding the prior closing, which would need to be obtained from either the lender, settlement agent, or another third party involved in the transaction and then examined to verify whether a prior loan policy was issued. (Id.) Plaintiff subpoenaed records relating to these remaining transactions from approximately 24 non-party title agents and lenders and from this sample Plaintiff picked thirteen transactions that he

---

[2] The review took Rice, who has over twenty years' experience in the title industry, an average of fifteen minutes to review each file and to determine whether it was possibly eligible for the refinance rate. (Rice Decl. ¶ 6.)

claims contain overcharges. Defendant reviewed these thirteen files and identified a number of issues, including that 3 of the 13 transactions properly received the discounted title insurance rate and that one borrower agreed to be charged the standard rate in exchange for a greater discount on attorneys' fees in the transaction. (Id. ¶¶ 19-22.)

The record developed for summary judgment makes clear that the factual disputes regarding whether an individual transaction qualified for the refinance rate extends to the refinance completed by Plaintiff Bernard Loef. During his January 2007 refinance, Loef did not provide the title agent, First Suburban Title Company, any prior title insurance. (Def. SMF (ECF No. 203) ¶25.) However, the closing file from the January 2007 refinance includes evidence of Loef's November 2005 mortgage as well as a prior policy of title insurance for Loef's property issued by First American in July 2004. (Def. SMF (ECF No. 203) ¶26.) The parties dispute the import of these documents and whether these documents should have allowed the title agent to ascertain that Loef qualified for a refinance rate in 2007.

In any event, in connection with Loef's 2007 refinance, First American ultimately issued an Eagle Loan Policy to Loef's lender. Under the First American Procedure Manual in place at the time, title agents were instructed to apply the refinance rate to an Eagle Loan Policy only if the prior policy was also an Eagle Policy. Thus, First American asserts that Loef's 2007 transaction did not qualify for the refinance rate even if the title agent had known that title insurance had issued in connection with the prior 2005 refinance. To the extent that Plaintiff disputes this assertion, it cannot be disputed that the factual record does not allow for a determination that Loef in fact did not get the refinance rate because of any failure to ascertain or assume the existence of a prior title insurance policy. Rather, it is just as likely that Loef was

denied the refinance rate based on the title agent's application of the First American Procedures Manual and the decision to issue an Eagle Loan Policy.

As the Loef transaction displays, the rate determination for Loef's 2007 title policy (and each policy sold to any class member) was made by an individual title agent. Virtually all of First American's Maine title agents are licensed attorneys or staffed by licensed attorneys. (Def. SMF (ECF No. 203) ¶7.) Each agent is subject to an agency agreement with First American that requires the agent to "[r]eceive and process applications for title insurance in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules and instructions of First American Title." (Def. SMF (ECF No. 203) ¶5.) With respect to determining whether an individual qualifies for First American's refinance rate, the record shows that the practice of First American's title agents varies with respect to how each agent determines if the transaction qualifies for the refinance rate. (Def. SMF (ECF No. 203) ¶11 (collecting declarations of over twenty First American Maine title agents describing their practices for attempting to locate a prior title policy)). Given this documented variation in practice and the variety of real estate transactions, the record now reflects a variety of explanations for the cost of the First American title policies sold to class members. The Court must now consider whether there is sufficient commonality to justify class certification in light of this variation.

### III.   DISCUSSION

Defendant moves for class decertification on two grounds. First, Defendant contends that under Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011), the class fails to satisfy Rule 23(a)'s commonality requirement as set forth by the Supreme Court. Id. at 2551. Second, and

relatedly, Defendant asserts that "the central liability question in this case is whether each class member qualified for and was wrongly denied the refinance rate" and contends that there is no common answer to this underlying liability question. (Def.'s Mot. to Decertify Class (ECF No. 208) at 7.) Rather, according to Defendant, liability depends on a file-by-file review of documents from each potential class member's alleged refinance transaction and prior transaction. Defendant asserts this individualized review defeats commonality and predominance under Rules 23(a) and 23(b)(3), respectively.

Plaintiff responds that Defendant's Motion is untimely and that certification is still justified on the current record. Specifically, Plaintiff challenges Defendant's contention that individual liability is the key question. Plaintiff instead maintains that resolution of this case depends on "the nature and extent of First American's duty to ascertain the correct rate" before issuing a title insurance policy. (Pl.'s Opp. to Def.'s Mot. to Decertify Class (ECF No. 224) at 3.) This issue, Plaintiff argues, "is most economically resolved … on a class-wide basis … as a matter of law." (Id.) Plaintiff further asserts that Wal-Mart is not instructive here and that Defendant's argument that individual claims predominate is really an argument about calculating damages on an individual basis that does not defeat predominance.

### A. Commonality After Wal-Mart

Quite simply, Defendant presents the better argument. The Supreme Court's recent decision in Wal-Mart has transformed the Rule 23(a)(2) commonality standard from a "low bar," Campbell, 269 F.R.D. at 74 (quoting In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 19 (1st Cir. 2008)), to a far more searching inquiry. See Wal-Mart, 131 S. Ct. at 2551. Following Wal-Mart, the ability to articulate common questions does not by itself satisfy Rule 23(a)(2). See id. Rather, the Supreme Court held that "[c]ommonality requires the plaintiff

8

to demonstrate that the class members have suffered the same injury," which "does not mean merely that they have all suffered a violation of the same provision of law." Id. (internal citation and quotation omitted).

In certifying the current class, the Court found that there were two common questions:

(1) What is the ascertainment obligation of First American?

(2) What, if any, is the presentment obligation of a title insurance purchaser?

Campbell, 269 F.R.D. at 74-75.  What is now clear is that each class member presents unique facts as to what was presented in connection with their purchase of title insurance and what steps were taken to ascertain whether they qualified for First American's published refinance rate.  As a result, even assuming that the Class has a common injury (i.e., each was overcharged for title insurance by Defendant), merits discovery has not uncovered any common cause for that injury that can be traced to Defendant.  Additionally, it is now clear that First American has different defenses as to why individual class members were not charged the refinance rate at the time of closing.  See Wal-Mart, 131 S. Ct. at 2561 (noting that defendant retains a right to litigate defenses to individual claims under Rule 23).  Thus, there are not common answers to these common questions.  In the absence of a common answer, neither liability nor damages can be established on a class wide basis.

In similar title insurance cases, at least two courts have applied Wal-Mart and found commonality lacking.  See, e.g., Scott v. First Am. Title Ins. Co., 276 F.R.D. 471, 480 (E.D. Ky. 2011) (finding commonality lacking because "there is no common method for ascertaining those members falling within the class parameters" and because "the Court would still need to conduct an individualized inquiry of each borrower's refinance transaction to determine whether a particular borrower … paid a premium that *exceeded* the rate amount on file") (emphasis in

original); Corwin v. Lawyers Title Ins. Co., 276 F.R.D. 484, 490 (E.D. Mich. 2011) (finding commonality lacking because "the critical inquiry without which liability cannot attach requires individualized determination").

As in this case, the Corwin plaintiffs sought classwide relief claiming they had been charged the standard title insurance rate when they actually qualified for discounted title insurance associated with refinance transactions.[3]  276 F.R.D. at 490.  However, the district court concluded that "[t]he plaintiff cannot satisfy the requirement of Rule 23(a)(2) because, although there are questions common to the absent class members and the plaintiff that must be decided before liability is established, the critical inquiry without which liability cannot attach requires individualized determination."  276 F.R.D. at 490.  Because liability would require an assessment of each transaction to determine if the absent class member qualified for the discount rate, it could not be established "in one stroke."  Id.  See also Wal-Mart, 131 S. Ct. at 2551. Furthermore, the court said that even if the title insurance company had failed to make the proper inquiry about the existence of title insurance in a prior transaction (a common question in the instant case), such a finding would not establish that the title insurance company was unjustly enriched by charging the standard rate.  Id.

Similarly, the district court in Scott denied class certification because the "central common question" – whether the Class was entitled to the discounted rates and, the other side of

---

[3] The Court acknowledges that the instant case has a class definition more specific than the proposed class in Corwin.  Because the proposed class in Corwin was more broadly defined to include all individuals who had purchased title insurance at the standard rate within a given time period for property within the State of Michigan, that case would have required a determination as to whether each putative class member had actually purchased title insurance in an earlier transaction for the mortgage being refinanced.  The district court understandably focused on this particular individualized inquiry as a dissimilarity within the class.  See Corwin, 276 F.R.D. at 490.  In the instant case, the Court need not determine whether each class member purchased title insurance in an earlier transaction – that is a requirement of class membership.  Nonetheless, variations in the closing files and readily available title search materials for each class member would require individualized determination as to what was presented and what could be readily ascertained regarding prior title policies.  In short, the Court believes that the commonality hurdle is the same despite difference in the class definition.

the coin, whether First American was unjustly enriched – could not be determined "in one stroke" for all class members without inspection of individualized proof.[4]  276 F.R.D. at 478 (quoting Wal-Mart, 131 S. Ct. at 2551).  Plaintiff in Scott argued that the existence of a prior mortgage transaction was sufficient for the trier of fact to conclude that a property's title was previously insured.  The district court, however, disagreed, holding that "the existence of a mortgage is not a proxy for title insurance."  Id. at 479.  Accordingly, resolving whether a putative class member was entitled to discounted title insurance that he or she did not receive "requires highly individualized fact-based inquiries into each borrowers' relevant real estate transactions" to determine if title to the property was previously insured.  Id. at 478.  "Determining the existence of a prior title insurance policy," the district court concluded, "would certainly require individualized inquiry into each closing transaction and undermines Plaintiffs' position that Rule 23's commonality requirement is satisfied in this instance."  Id.  "Particularly relevant" in convincing the Court that commonality had not been met was "the stark reality" that there were "no common answers to the question of liability" and "no common *method* for resolving the liability question."  Id. at 479 (emphasis in original).

The Court concludes that the class certified here cannot be meaningfully distinguished from the proposed classes in Corwin and Scott and, as a result, finds that the requisite commonality is not established under the standard enunciated in Wal-Mart.

### B. Predominance After Discovery

Even if Wal-Mart had not changed the legal landscape with respect to commonality, the factual landscape of this case has changed following discovery.  In its initial order certifying this action, the Court certified this class under Rule 23(b)(3) finding, in relevant part, that there were

---

[4] The Court acknowledges that the sliding scale of title insurance rates at issue in Scott raises a unique complexity not at issue under First American's two-tier Maine rate schedule. 276 F.R.D. at 479-80.

11

a number of legal questions that satisfied the predominance requirement. See Campbell, 269 F.R.D. at 78-79. The Court listed those questions as including:

(1) In accordance with 24-A M.R.S.A § 2316 and the First American's Filed Rates, did Defendant have an absolute duty to charge a class member its filed refinance rate?

(2) Absent an absolute duty to charge the refinance rate, did Defendant at least have a duty to exercise reasonable care in determining which rate to charge a refinancer?

(3) What does reasonable care require:

  a. Did First American have a duty to disclose the availability of the refinance rate and explicitly request proof of prior title insurance from each borrower?

  b. Alternatively, did First American have a duty to procure and examine the HUD-1 Statement of each refinancer and charge its filed refinance rate so long as lines 1108-1109 were filled in?

  c. Was it unreasonable for First American to not assume that any prior institutional mortgage (pre-2008) included a lender's title policy?

Id. at 78. Having had an opportunity to review the summary judgment briefing, the Court concludes that the first question reflects a novel argument and that Plaintiff cannot establish that First American's ascertainment duty is absolute. See In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 26 (1st Cir. 2008) (explaining that "reliance on a novel theory to establish a primary element of a claim necessitates a more searching inquiry into whether plaintiffs will be able to prove the pivotal elements of their theory at trial"). Rather, Plaintiff's ability to prove liability on any claims will require them to prove that neither the title agent nor First American used reasonable care in determining which transactions were entitled to the lower refinance rate. Undoubtedly, determining what qualifies as reasonable care is going to be transaction-specific.

Even if the Court assumes that the Plaintiff could establish as a matter of law that First American had an absolute duty to charge the refinance rate in some circumstances, it is clear on

the developed record that determining whether First American failed to fulfill that absolute duty will require individual review of each class member's transaction. Despite access to merits discovery, Plaintiff has not presented sufficient evidence to create a trialworthy issue that there was a classwide failure on the part of First American title agents to charge the refinance rate. Rather, the Court is left to reach the same conclusion reached by the district court in <u>Boucher v. First American Title Insurance</u>, No. C10-199RAJ, 2012 WL 3023316 (W.D. Wash. July 24, 2012): "the instances of overcharging . . . were not systematic (as the [plaintiffs] claimed), but rather the result of errors that are apt to occur in any set of hundreds of thousands of customer transactions."[5] <u>Id.</u> at *7. When the developed record leads to such a conclusion, common contentions do not predominate and, as a result, a class action is not superior to other methods of adjudicating the claims of First American's customers.

Notably, two separate circuits who have reviewed denials of class certification in similar suits against title insurance companies since the <u>Wal-Mart</u> decision have concluded that individualized inquiries predominated over common questions. See, e.g., <u>Benavides v. Chicago Title Ins. Co.</u>, 636 F.3d 699, 702-03 (5th Cir. 2011) (upholding denial of class certification because the predominant issues to determine were "individualized inquiries as to whether particular persons qualify for the discount and were denied it"); <u>Randleman v. Fidelity Nat'l Title Ins. Co.</u>, 646 F.3d 347, 350, 353-54 (6th Cir. 2011) (upholding denial of class certification because "liability could only be determined on an individual basis by examining each individual homeowner's file" and therefore common issues did not predominate because both class membership and liability depended on an individualized review); <u>see also</u> <u>Ahmad v. Old</u>

---

[5] In <u>Boucher</u>, while finding a lack of predominance, the district court noted that <u>Wal-Mart</u> might require a finding that commonality was lacking as well. <u>Boucher</u>, 2012 WL 3023316, at * 6, 8 & n.5 (W.D. Wash. July 24, 2012) (refusing to certify class because proving each class members' claim "would depend on a file-by-file review of each class member's transaction" and noting that "[w]ere it necessary for the court to revisit its commonality finding, it might reach a different conclusion in light of <u>Dukes</u>").

13

Republic National Title Ins. Co., 690 F.3d 698 (5th Cir. 2012) (apply Benavides and reversing the district court's class certification). Following Benavides, Ahmad, Randleman and Boucher, the Court is likewise satisfied that the developed factual record does not support certification under Rule 23(b)(3).

In the absence of class certification, the Court is necessarily required to consider whether it continues to have subject matter jurisdiction over any individual claims pressed by Mr. Loef. In this case, the sole basis for jurisdiction over such state law claims would be 28 U.S.C. § 1332(d)(8). Whether this provision of the Class Action Fairness Act ("CAFA") would allow the Court to maintain jurisdiction after decertification is a question yet to be resolved by the First Circuit. See College of Dental Surgeons v. Connecticut General Life Ins. Co., 585 F.3d 33, 42 (1st Cir. 2009) (expressing "no opinion" on the issue of "whether a later denial of class certification will divest the district court of CAFA jurisdiction"). Nonetheless, the other circuits to address the issue have held that CAFA jurisdiction remains even in the absence of a certified class. See, e.g., Pilgrim v. Universal Health Card, LLC, 660 F.3d 943 (6th Cir. 2011) (collecting cases); Cunningham Charter Corp. v. Learjet, Inc., 592 F.3d 805, 806 (7th Cir. 2010) (holding that "federal jurisdiction under the Class Action Fairness Act does not depend on certification"); but see Epps v. JPMorgan Chase Bank, N.A., Civil No. WMN-10-1504, 2012 WL 5250538 at *10 (D. Md. 2012) (remanding case following denial of certification). If any party has an objection to the Court continuing to exercise subject matter jurisdiction over this case as an individual action, a motion to dismiss shall be filed by January 18, 2013. In the absence of any such motion or a voluntary dismissal of this action by Plaintiff, the parties shall file a joint proposal for how to proceed with this individual action, including whether they wish to engage in

dispositive motion practice regarding Mr. Loef's individual claims. Said proposal shall be filed no later than January 25, 2013.

## IV. CONCLUSION

Having concluded that the record no longer supports class certification, the Court hereby GRANTS Defendant's Motion to Decertify the Class (ECF No. 208) and DECERTIFIES the Class. With only one individual plaintiff remaining, the Court finds the remaining pending motions (ECF Nos. 185, 202 & 207), along with the accompanying requests for oral argument, to be MOOT.

SO ORDERED.

/s/ George Z. Singal  
United States District Judge

Dated this 10th day of December, 2012.